UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WISCONSIN

---

In re:

YVETTE D. FRASIER,

Debtor.

Case No. 19-13159-7

---

## MEMORANDUM DECISION

Yvette Frasier ("Debtor") filed a voluntary Chapter 7 on September 19, 2019. Two months later, she moved to find Thysse Printing Service, Inc. ("Thysse"), in contempt for violating the automatic stay. Thysse objects to the motion. The Court ordered briefs from each party explaining their position.

### BACKGROUND

Debtor was a minority owner of AAMS - Brookfield, Inc., d/b/a Aesthetic Artistry Spa, Inc. Thysse provided printing services to the Debtor and her business. Debtor owes about $5,800 for such services. Thysse contacted the Debtor in May 2019 seeking payment. Thysse again contacted the Debtor in September stating it would pursue collection in small claims court if the Debtor did not respond on or before September 16, 2019. Debtor failed to respond by that date.

Eight days later, Thysse received correspondence from J. David Krekeler of the Krekeler Strother law firm stating, "Aesthetic Artistry Spa has ceased doing business and is winding down its affairs. We are presently collecting accounts and liquidating assets to distribute to creditors." This letter did not mention the Debtor's intent to file bankruptcy.

In response to the letter, Thysse called the offices of the Krekeler firm. Thysse repeated its intention to file a small claims complaint. During this call, the Krekeler firm did not mention the Debtor planned to file bankruptcy.

A day later, Debtor filed her Chapter 7 petition. She listed Thysse as a creditor. Two business days later, Thysse filed its pro se small claims complaint ("Complaint").[1] Thysse hired a process server on the same day. The Complaint was served thirteen days later on October 5, 2019.

Three days after service of the Complaint, Thysse received correspondence from Attorney John Driscoll ("Driscoll"). Driscoll said the Debtor filed bankruptcy and the Complaint violated section 362 of the Code. Driscoll offered to settle the stay violation for $1,000, along with the dismissal of the small claims action. There was no explanation of the dollar amount suggested by Driscoll. Thysse dismissed its Complaint two days later.

More than a month later, a Motion for Order for Contempt and Sanctions for Violation of Automatic Stay (the "Motion") was filed. Debtor asserts that Thysse violated sections 362(a)(1), (3), and (6). She seeks an order finding Thysse in civil contempt and an award of actual and punitive damages, including costs and attorney's fees. Although the Motion fails to state a dollar amount for damages, an Affidavit from Driscoll says the Debtor has incurred $1,859.50 in legal fees to litigate this matter.

---

[1] Case no. 19SC06722.

2

**DISCUSSION**

The automatic stay freezes the rights of creditors as of the petition date to ensure that the claims against a debtor's estate are resolved in an orderly fashion and in accordance with the Bankruptcy Code. One function of the stay is to prevent creditors from taking any judicial or non-judicial action outside the bankruptcy court to enforce claims against a debtor that could have been brought before the petition date. 11 U.S.C. § 362(a)(1). The bankruptcy filing stays "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). The stay also prohibits "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the [bankruptcy] case…[.]" 11 U.S.C. § 362(a)(6).

When the stay is violated, section 362(k)(1) provides a remedy for a debtor to recover damages and states that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1).

To recover damages under section 362(k)(1), a debtor must establish, by a preponderance of the evidence, that: (1) a bankruptcy petition was filed; (2) the debtor is an individual under the automatic stay provision; (3) the creditor had notice of the petition; (4) the creditor's actions had willfully violated the stay; and (5) the debtor suffered damages. *In re Sori*, 513 B.R. 728, 732 (Bankr. N.D. Ill. 2014).

The parties do not dispute that a bankruptcy was filed and that the Debtor is an individual. Thus, the first two elements under section 362(k)(1) are not at issue. The parties dispute whether Thysse's actions were taken in willful violation of the stay and whether the Debtor suffered damages.

1. *Willful Violation of the Automatic Stay*

A debtor must prove that the violation of the stay was willful. *Thompson v. Gen. Motors Acceptance Corp., LLC,* 566 F.3d 699, 708 (7th Cir. 2009). "A violation of the stay is willful if the creditor: (1) had actual notice of the bankruptcy filing; and (2) commits a deliberate act when it violated the stay." *Sori,* 513 B.R. at 733 (citing *In re Radcliffe*, 563 F.3d 627, 631 (7th Cir. 2009)). "A willful violation does not require specific intent to violate the stay; it is sufficient that the creditor takes *questionable action* despite the awareness of a pending bankruptcy proceeding." *Radcliffe,* 563 F.3d at 631 (emphasis added) (citing *Price v. United States (In re Price),* 42 F.3d 1068 (7th Cir. 1994)).

Debtor concedes that Thysse may not have received notice of the September 19 bankruptcy filing by the time the Complaint was filed and the process server was hired on September 23. But Debtor asserts Thysse knew about the bankruptcy filing by the time the Debtor was served. Effectively, the Debtor argues that Thysse willfully violated the stay on October 5, 2019. Debtor wants this Court to determine that the lack of an affirmative action to prevent the process server from serving the Debtor constitutes a willful violation of the stay.

Thysse counters that it believed the Debtor had been served earlier since the process server was hired on the same date the Complaint was filed. Thysse concedes that it did not remain in contact with the process server to learn otherwise. It says the failure to call off the process server was not an intentional act.

Serving debtors through a process server is a common practice when creditors take judicial actions against those indebted to them. Employment of a process server therefore is scrutinized under the automatic stay provisions of the Code.

> The stay includes a prohibition against the issuance or employment of process. This recognizes that in some cases the mere issuance or service of process, without further pursuit of litigation, may be sufficient to induce action on the part of a debtor. Particularly in individual bankruptcy cases, this might enable a creditor to obtain payment or property to which it would not otherwise be entitled.

3 *Collier on Bankruptcy* ¶ 362.03[3][b] (16th ed.).

Creditors have a duty to undo actions taken in violation of the stay. *In re Wright,* 75 B.R. 414 (M.D. Fla. 1987). A willful violation can be found "based on an act of omission when a creditor fails to cure a previous violation of the stay or otherwise restore the status quo." *In re Banks,* 253 B.R. 25, 31 (Bankr. E.D. Mich. 2000). *See also Mitchell Const. Co. v. Smith (In re Smith),* 180 B.R. 311, 319 (Bankr. N.D. Ga. 1995) ("Failure to take affirmative action to undo an innocent violation of the automatic stay . . . may constitute a willful violation.").

A creditor's failure to stop a process server from serving a debtor—while having actual knowledge of the bankruptcy—may be a willful violation of the

stay. *See, e.g.*, *Bankers Healthcare Group, Inc. v. Bilfield (In re Bilfield)*, 494 B.R. 292, 301 (Bankr. N.D. Ohio 2013) (creditor had an affirmative obligation to instruct its process server to stand down). *See also Gray v. ZB, N.A. (In re Gray)*, 567 B.R. 841 (Bankr. W.D. Wash. 2017) (creditor violated the stay by not seeking to quash bench warrants for debtor's arrest). That said, if the creditor takes prompt action to undo an innocent violation, it may be able to avoid a willful violation.

Debtor's bankruptcy was filed on Thursday, September 19, 2019. The Bankruptcy Noticing Center sent a first-class mail notice of the petition on Sunday, September 22, 2019. Thysse's pro se Complaint was filed the next day and given to the process server. It is reasonable to assume that Thysse did not have notice of the bankruptcy when it filed the Complaint and hired the process server. Debtor concedes the filing of the Complaint was not a willful violation.

Thysse does not recall the exact date it received notice of the bankruptcy. Nothing in this Court's record proves exactly when Thysse found out about the bankruptcy. Neither is there evidence it knew about the bankruptcy before the Complaint was served. Debtor urges the Court to presume that Thysse received notice by September 27, 2019, at the latest. Debtor provides no evidence about why the Court should make this assumption.

The only concrete evidence of notice comes from a letter by Driscoll dated October 8, 2019. While receipt of notice after allowance for passage of mailing time is presumed, it is clear that Thysse promptly dismissed its Complaint

6

against the Debtor two days after receiving Driscoll's letter. Thysse met its duty to undo actions taken in violation of the stay.

The failure of Thysse to prevent the process server from serving the Complaint was not a willful violation of the stay. Debtor has failed to establish, by a preponderance of the evidence, that Thysse had notice of the bankruptcy before receiving Driscoll's letter. While Thysse may have committed a technical violation of the stay, the totality of the circumstances and Thysse's prompt dismissal of its Complaint do not amount to a willful violation of the stay. Furthermore, the Court cannot find any "questionable actions" taken by Thysse once it was notified of the bankruptcy through Driscoll's letter. Thus, the willful violation element under section 362(k)(1) is not met.

2. *Debtor's Damages*

A willful violation of the stay entitles a debtor to recover compensatory damages for attorney's fees under section 362(k)(1). *See Aiello v. Providian Fin. Corp.,* 239 F.3d 876, 880 (7th Cir. 2001). Damages are typically not awarded for inadvertent or mere technical violations of the stay. *Kline v. Deutsche Bank Nat'l Trust Co. (In re Kline),* 472 B.R. 98 (B.A.P. 10th Cir. 2012), *aff'd,* 514 Fed. App'x 810 (10th Cir. 2013); *Liebzeit v. FVTS Acquisition Co. (In re Wolverine Fire Apparatus Co.),* 465 B.R. 808, 816 (Bankr. E.D. Wis. 2012); *In re Welch,* 296 B.R. 170, 172 (Bankr. C.D. Ill. 2003).

An award of punitive damages is only warranted in "appropriate circumstances." 11 U.S.C. § 362(k)(1). "[W]hen a stay violation is no worse than 'willful' . . . an award of punitive damages is not warranted. The violative

7

conduct *must also be egregious or reprehensible.*" *Braatz v. Check & Cash LLC (In re Braatz),* 2019 WL 6769667, 2019 Bankr. LEXIS 3776, at *7 (Bankr. E.D. Wis. Dec. 12, 2019) (emphasis added).

Debtors carry the burden to establish the extent of any damages. *See Clayton v. King (In re Clayton)*, 235 B.R. 801, 810 (Bankr. M.D.N.C. 1998). The amount of damages must be shown with reasonable certainty.

> The Court cannot award damages, costs or fees where none have been clearly proven . . . . Damages can only be awarded if there is evidence supporting the award of a definite amount, which may not be predicated upon pure speculation.

*In re Alberto,* 119 B.R. 985, 995 (Bankr. N.D. Ill 1990).

Debtor argues she is entitled to an award for damages because she felt anxious and embarrassed by being served with the Complaint. And Driscoll maintains that his original settlement request was reasonable considering the steps taken to contact Thysse, the research performed, and review of the small claims Complaint. Driscoll provides another list of tasks performed to justify the new demand of $1,859.50. This list includes drafting and preparing the Motion; appearing telephonically for a preliminary hearing; and researching the standard for "willful" under section 362 and drafting the filed briefs. The amount does not include any sums for damages of the Debtor. Instead, it is only for attorney's fees.

Thysse took prompt action to cure the violation by dismissing the small claims Complaint within two days of a letter from Driscoll. Any of the tasks

8

performed and costs incurred after that were unnecessary to reinstate the status quo or remedy the technical violation.

Debtors are not entitled to an award of actual damages, including costs and attorney's fees, where a stay violation is no longer continuing, and a debtor fails to mitigate his or her damages. *See Hutchings v. Ocwen Federal Bank, FSB (In re Hutchings),* 348 B.R. 847, 917 (Bankr. N.D. Ala. 2006).

Debtor's counsel characterizes himself as experienced in bankruptcy matters. As experienced bankruptcy counsel, Driscoll should have known that the violation was cured following a simple letter to Thysse. No other action was needed to cure the violation. There was no need to review the Complaint given the dismissal. He should have known that Thysse's technical violation and the prompt dismissal of its lawsuit did not amount to a willful violation under section 362(k)(1). Thus, most of the legal fees requested have nothing to do with Thysse's initial technical violation of the stay. At most, the fees incurred to prepare the two-paragraph letter that appears to be a form, and, perhaps, having a paralegal check to confirm dismissal of the Complaint are the most that was necessary to prompt correction of the violation.

Debtor has failed to establish, by a preponderance of the evidence, that she suffered actual damages beyond the minimal legal fees incurred for the letter sent to Thysse on October 8, 2019. In fact, no damages—other than attorney's fees—are sought.

Thysse's conduct was neither egregious nor reprehensible. An award of punitive damages is not appropriate under these circumstances. Thysse

9

promptly dismissed its lawsuit and has behaved exactly how courts wish to see creditors behave when there is a technical violation of the stay.

If the Court had found a willful violation of the stay and determined that the Debtor suffered actual damages, the next step would be to consider imposing civil contempt sanctions pursuant to the Debtor's Motion. Under the new standard established by the Supreme Court in *Taggart v. Lorenzen*, bankruptcy courts may only impose civil contempt sanctions "if there is *no fair ground of doubt* as to whether the order barred the creditor's conduct," or, in other words, when "there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful." *Taggart v. Lorenzen,* 139 S. Ct. 1795, 1799 (2019) (emphasis in original).

Considering this standard, the Court could not impose civil contempt sanctions on Thysse for a hypothetical willful violation of the stay. As a pro se plaintiff in the small claims action, Thysse had an objectively reasonable basis for concluding that its lawsuit and the hiring of a process server were lawful acts.

3. *Conduct of Debtor's Counsel*

Driscoll and his firm could have avoided this entire ordeal. They could have notified Thysse of a potential bankruptcy in the initial correspondence sent just one day before the petition date. When Thysse called the Krekeler firm in response to the September 18, 2019 letter, it could have been told of the plans for the bankruptcy.

The Court recognizes that Driscoll did not have an affirmative obligation to notify Thysse of a bankruptcy filing. Even so, counsel was aware of a potential small claims lawsuit against his client. He could have saved all parties involved critical resources and time by at least warning Thysse of a potential bankruptcy filing. Courts expect debtors in similar situations to exercise their best judgment and at least try to mitigate any potential damages.

> Although the Bankruptcy Code does not require a debtor to warn his creditors of existing [stay] violations prior to moving for sanctions, the debtor is under a duty to exercise due diligence in protecting and pursuing his rights and in mitigating his damages with regard to such violations. This duty includes "such cooperation as might reasonably and promptly mitigate [the debtor's] damages."

*Clayton,* 235 B.R. at 811 (citations omitted).

The automatic stay provisions of the Code must be strictly enforced and protected. Debtors are afforded critical protections under section 362 of the Code, and this Court has a duty to uphold such protections. The Court has an equally important duty to protect the integrity of the stay by filtering out futile actions brought for technical violations where no real damages have occurred and immediate action is taken to cure the stay violation. This is the case here. By pursuing this matter after Thysse dismissed its pro se Complaint, Driscoll has wasted this Court's resources and time. As an experienced bankruptcy attorney, Driscoll knew that the remedy of the violation—dismissal of the Complaint—was performed well before the filing of the Debtor's Motion.

Here, it would be unfairly punitive to award fees against Thysse, or to require the Debtor to pay fees for the Motion. Having obtained the remedy for a technical violation with a simple warning in the form of a letter, any damages

11

were mitigated. Attorneys should not receive a windfall of attorneys' fees when most, if not all, of the time expended occurred after the resolution of any technical violation. The Court will not order such a result, especially when, as here, the creditor took prompt action to remedy its stay violation. Under the facts here, any award of fees would be counter to the duty to protect the integrity of the stay by filtering out futile actions brought for technical violations where no real damages have occurred.

## CONCLUSION

For these reasons, the Motion for Contempt and Sanctions for Violation of the Automatic Stay is denied. Any attorney's fees owed by the Debtor to her counsel for actions taken after Thysse dismissed its lawsuit on October 10, 2019, are also disapproved.

This decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

A separate order consistent with this decision will be entered.

Dated: February 26, 2020

BY THE COURT:

_____
Hon. Catherine J. Furay
U.S. Bankruptcy Judge